IN THE DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GERAL R. BROWN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 06-CV-115-JHP |
| | ) |
| HARTFORD LIFE INSURANCE CO., | ) |
| a corporation, | ) |
| | ) |
| Defendant. | ) |

## ORDER AND OPINION

Before the Court are Plaintiff Geral R. Brown's Opening Brief in Support of ERISA Claim for Long Term Disability Benefits and accompanying Appendix of Exhibits [Docket Nos. 27, 28 ] and Defendant Hartford Life Insurance Company's Response Brief [Docket No. 29].

## BACKGROUND

Plaintiff Brown was employed as a truck driver for FedEx Freight East, Inc., when on March 3, 2003, he fell off the bed of a truck while attempting to load freight. Brown landed on his left side and elbow. Subsequent X-rays revealed a fracture of the radial head of his left elbow. This fracture required surgery to remove the fractured fragments of the radial head and to replace the radial head with a metal prosthesis. In April 2003, Plaintiff was diagnosed with Complex Regional Pain Syndrome, Type 1, of the upper left extremity.

At the time of Brown's accident, FedEx sponsored a long term disability plan ("the Plan") which secured insurance from Hartford to underwrite any liabilities arising under the Plan. Under the Plan, a participant is entitled to up to 12 months of benefits if a disability prevents him from

1

performing the duties of his or her specific job within the company. After 12 months, the employee may continue to receive disability benefits only if the disability prevents him or her from engaging in any occupation for which he or she is reasonably qualified by training, education, and experience.

Brown was awarded 12 months of disability benefits because of his inability to perform the duties of his specific job. After 12 months, Plaintiff was evaluated to determine whether his disability prevented him engaging in any occupation for which he or she is reasonably qualified by training, education, and experience. Hartford determined that Brown was not entitled to continued benefits under that "any occupation" provision and terminated Brown's benefits. Brown has exhausted his administrative remedies and now seeks reinstatement of his long term disability benefits.

Brown alleges wrongful denial of disability benefits, in violation of 29 U.S.C. § 1132(a)(1)(B). Brown argues that Hartford's determination that he was not entitled to "any occupation" long term benefits was: 1) not supported by substantial evidence; 2) contrary to the clear weight of the medical and vocational evidence; and 3) arbitrary and capricious, and constituted an abuse of discretion. (Pl.'s Br. at 6.) Brown urges this Court to review the denial of benefits under a *de novo* standard of review. Hartford argues that an "arbitrary and capricious" standard of review is appropriate, and that such a review will show that the Hartford did not arbitrarily and capriciously deny Brown's "any occupation" long term benefits.

## DISCUSSION

### A. Standard of Review

The Supreme Court has held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary

discretionary authority to determine eligibility for benefits or to construe terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). When a benefit plan reserves discretionary authority, a court reviewing a challenge to a denial of benefits applies an arbitrary and capricious standard to the plan administrator's decision. *Fought v. Unum Life Ins. Co. of America,* 379 F.3d 997, 1003 (10th Cir. 2004). "A reservation of discretion need not actually use the words 'discretion' or 'deference' to be effective, but it must be clear." *Nichols v. Prudential Ins. Co. of America,* 406 F.3d 98, 108 (2nd Cir. 2005)(quoting *Kinstler v. First Reliance Standard Life Ins. Co.,* 181 F.3d 243, 251 (2nd Cir. 1999). Examples of "clear" language that suffices include "authorization to 'resolve all disputes and ambiguities,' or make benefits determinations 'in our judgment.'"*Id.* As a general rule, "language that establishes an objective standard does not reserve discretion, while language that establishes a subjective standard does." *Id.*

In the present case, the question is whether the Plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits.[1] Hartford alleges that the following language contained within the Plan does confer that type of discretion:

"Final interpretation of all provisions and coverages will be governed by the Group Insurance Policy on file with Hartford Life at its home office."

(Resp. at 3.) Hartford cites numerous cases involving similar plans, and attempts to analogize the Plan language at issue with the language used by the plans involved in those cases:

Finding that the above language confers discretionary authority is consistent with decisions from other jurisdictions. *See also, Duhon v. Texaco, Inc.*, 15 F.3d 1302, 1305 (5th Cir. 1994) (A plan provision stating that "the decisions of the Plan Administrator shall be final and conclusive with respect to every question that may arise relating to either the interpretation or administration of the plan" or giving the

---

[1]There is no question of ambiguity in the Plan's terms. The issue raised by Brown is simply whether Hartford's determination that he was not eligible for "any occupation" long term benefits was correct.

3

plan administrator complete discretion to "make final and conclusive decision of the claim" is suffcient to confer discretion justifyng application of the arbitrary and capricious standard of review); *Kirwan v. Marriott Corp.*, 10 F.3d 784, 788 (11th Cir. 1994)("full and exclusive authority to determine all questions of coverage and eligibility" and "full power to construe and provisions" of the plan held sufficient to give complete discretion to plan administrator); *Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154 (9th Cir. 2001) (language giving administrator "full, final, conclusive, and binding power" to interpret policy in making claims determinations conferred discretion on administrator, so as to require abuse of discretion standard of review).

(Resp. at 18.) The Court, however, thinks the contrast between the language used in the Plan at issue, and the language used in those cases, is stark. The Plan here simply says that *interpretation* of policy provisions and coverages will be governed by a master policy on file at Hartford's home office. Additionally, it gives no administrator or fiduciary any sort of discretionary power to interpret the Plan. It simply makes clear that when there is a dispute as to how to interpret a Plan provision, the language of the master policy governs. Under the Plan, Hartford has no discretionary authority, it simply has the duty to pay benefits when a claimant submits competent medical evidence of disability according to the Plan's definitions and terms.

Because the Plan does not give any administrator or fiduciary the discretionary authority to determine eligibility for benefits or to construe terms of the plan, the Court applies a *de novo* standard of review to Hartford's denial of "any occupation" long term disability benefits.

**B. *De Novo* Review of Hartford's Denial of "Any Occupation" Long Term Disability Benefits**

Brown is entitled to long term disability benefits under the Plan so long as his condition meets the criteria set forth in the Plan. The Plan states:

> Disability or Disabled means that during the Elimination Period; and for the next 12 months, you are prevented by:
>
> > 1. Sickness,
> > 2. Mental Illness,

>    3. Accidental bodily injury,
>    4. Substance Abuse, or
>    5. pregnancy,
>
> from performing one or more of the Essential Duties of Your Occupation, and as a result your Current Monthly Earnings are no more than 80% of your Indexed Pre-disability Earning.
>
> After that, you must be so prevented from performing one or more of the Essential Duties of Any Occupation.

[Docket No. 28-3]. The Plan defines "Essential Duty" as a duty that:

> 1. is substantial, not incidental;
> 2. is fundamental or inherent to the occupation; and
> 3. can not be reasonably omitted or changed.
>
> To be at work for the number of hours in your regularly scheduled workweek is also an Essential Duty.

[Docket No. 28-3]. The Plan defines "Any Occupation" as:

> [A]n occupation for which you are qualified by education, training, or experience, and that has an earning potential greater than an amount equal to the lesser of the product of your Indexed Pre-disability Earnings and the Benefit Percentage and the Maximum Monthly Benefit shown in the Schedule of Insurance.

[Docket No. 28-3]. Brown is entitled to "Any Occupation" long term benefits so long as he meets those criteria set forth in the Plan. The briefing shows that there appears to be little dispute over Brown's medical condition. Brown is undisputedly suffering from "chronic regional pain syndrome, type I", is limited in the use of his left upper extremity, is limited to lifting five pounds with his left arm, and must take frequent breaks even when working within those restrictions. (Resp. at 13.)The dispute is over the extent to which Brown's condition prevents him from working. Therefore, the essential question is whether Brown's injuries prevent him from performing one or more of the essential duties of *every* occupation that Brown is qualified by education, training, or experience to perform.

5

In support of his claim that he is entitled to "any occupation" long term disability benefits, Brown submits medical records from his physician Dr. Tim Pettingell, reports from Dr. Richard Hastings, Dr. Gerald Hale, and Dr. A.E. Moorad, a "Vocational Evaluation" by vocational rehabilitation consultant Rhonda Blackstock, as well as a report by vocational rehabilitation expert Cheryl Mallon.[2] Because the dispute centers on whether Brown is capable of performing the functions of any occupation, the Court focuses its analysis on the reports dealing with Brown's suitability for employment.

Of those who have examined Brown's suitability for employment, only Cheryl Mallon concluded that Brown could not perform "any occupation."[3] Mallon found that:

> [Brown] is permanently and totally disabled from earning any wages in any employment for which he is, or could become physically suited, or reasonably fitted by education, training, or experience.

[Docket No. 28-11 at 4]. Mallon's report, however, offers little reasoning for her conclusion. Mallon notes a "review of the Dictionary of Occupational Titles and Classification of Jobs" gives Brown

---

[2] The Court recognizes that Brown also submits the findings of the Oklahoma Worker's Compensation Court and the Social Security Administration as evidence of his disability. The conclusions by those two bodies, however, are not relevant to this Court's *de novo* review of Hartford's denial of Brown's claim. Both of those bodies use standards for determining entitlement to benefits that are different from those found in the Plan. Therefore, the conclusions reached by those bodies in applying those different standards cannot be given authoritative weight here.

[3] The Court similarly recognizes Brown's submission of a report authored by Dr. Richard Hastings for use in the Oklahoma Worker's Compensation Court. That report concludes that Brown is "temporarily totally disabled at present and continuing as a result of the injuries sustained while working for FedEx Freight on or about March 3, 2003. [Brown] remains unable to return back to the workplace at this time as we find [Brown] to be unemployable at the time of our examination[.]" [Docket No. 28-8 at 14]. While the Court finds Dr. Hastings's evaluation of Brown's condition to be relevant, Dr. Hasting's *conclusion* that Brown is "temporarily totally disabled at present" is of no relevance. "Temporarily totally disabled" is a term of art utilized by the Worker's Compensation Court and a conclusion that Brown fits *that* definition does not bear on this Court's determination of whether Brown fits the definition(s) contained within the Plan.

the "work profile" of a truck driver and warehouse worker. [*Id.* at 3]. Since both of those jobs require heavy lifting, Mallon correctly concludes that Brown is ill-suited for either. Mallon's report evidences no other attempt to identify jobs that were suitable for Brown. Her report seemingly just concludes that because Brown's "work profile" is that of a truck driver or warehouse worker, and he cannot perform the duties of either, Brown is completely unemployable. However, Mallon's testing of Brown to determine his ability to learn new skills notes that Brown is of average intellect, presumably quite capable of adapting to a new job. [*Id.*]. The report, however, makes no attempt to identify any such new job that Brown might be physically capable of performing. In all, Mallon's report is unconvincing, offering little evidence to back up her conclusion that no job exists that Brown is capable of performing.[4]

The "Vocational Evaluation" authored by Rhonda Blackstock reaches a different conclusion than did Mallon:

> [Brown's] treating physician has recommended restrictions that place him in the 'sedentary' and 'limited light' exertional levels of work, with the preclusion of no lifting over 5 pounds with the left arm and no repetitive use of the left arm. He is right hand dominant. His work history is such that he does have transferable skills to perform jobs within these areas. Therefore, job placement is a viable vocational option.

[Docket No. 28-12 at 8-9]. Blackstock further identifies five occupations similar to the jobs that Brown had previously held and that would be suitable for Brown: "Truckload Checker, Gate Guard, Truck Cashier, and Drivers [sic] Cash Clerk, and Light Duty Driver." [Docket No. 28-12 at 8].

---

[4]While Brown raises his daily use of "narcotic" pain medication as a reason for his inability to work, Mallon, in reaching her conclusion that Brown cannot work, did not rely on Brown's use of pain medication. In fact, none of the medical professionals Brown relies upon make note of his use of narcotic pain medication as evidence of his inability to work. To the contrary, the one medical professional who addressed the impact of the narcotic pain medication on Brown's functionality, Dr. Siegel, concluded that the medications did *not* functionally impair Brown. [Docket No. 28-14 at 9].

7

In direct contradiction of the report of Mallon submitted by Brown, Hartford submits an "Employability Analysis Report" prepared by Hartford employee Diane Fant. [Docket No. 28-13]. Fant reviewed Brown's medical records from Dr. Pettingell, noted the restrictions placed upon Brown by his physician, then attempted to match Brown to jobs that could be performed under his restrictions. Fant used a computer program called OASYS (Occupational Access System), a job matching program that cross references an individual's qualifications with 12,741 occupations classified by the U.S. Department of Labor in its *Dictionary of Occupational Titles*. OASYS identified several jobs that were suitable for Brown, and Fant selected four that she felt were the "most appropriate and reasonable": "routing clerk", "identification clerk", "dump ground checker" and "checker I". [Docket No. 28-13 at 1]. Fant noted that these four occupations:

> [A]re sedentary or light in physical demands, do not require repetitive use of the left non-dominant extremity, do not involve lifting more than 5# with the left non-dominant hand, are prevalent in the national economy, and meet or exceed the required earning potential of $1981.20/month or $11.43/hour.

[Docket No. 28-13 at 2]. In all, Fant's report clearly outlines the criteria used in determining Brown's employability, explains the database that was used to match the criteria to known occupations, and explains why the identified occupations are appropriate for Brown.

Brown attacks Hartford's reliance on Fant's report. Brown focuses his attack on Fant's employment with Hartford, but Brown fails to identify how that employment has affected the validity of Fant's report. Brown describes the report as "conclusory, factually unsupported, [and] self serving" (Pl.'s Br. at 26.), but Brown does not attack the criteria used by Fant in her job search, the validity of the database used by Fant, nor the validity of the four jobs identified by Fant as most appropriate for Brown. While Fant's report certainly reaches a conclusion, it is far from "conclusory". To the contrary, it provides clear rationales for the conclusions reached. Those

8

conclusions are amply supported by facts found in the record, all noted within the body of the report. Brown also argues that Fant's report is

> "a distortion by omission because it ignores the reality of his severe chronic pain for which he takes strong narcotic pain medications on a daily basis. The evidence demonstrates that Brown's limited ability to perform minimal activities of daily living is conditioned upon careful avoidance of the kinds of activities that he would inevitably encounter if he tried to return to work in any capacity, including sedentary."

(Pl.'s Br. at 27-28.) The Court's review of the evidence, however, finds no evidence supporting that argument. None of the medical professionals relied upon by Brown ever reached the conclusion that "Brown's limited ability to perform minimal activities of daily living is conditioned upon careful avoidance of the kinds of activities that he would inevitably encounter if he tried to return to work in any capacity." While Cheryl Mallon's report did conclude that Brown was unemployable, Mallon did not base her conclusion on the grounds cited by Brown in his brief. Additionally, Dr. Siegel, a doctor hired by Hartford to review Brown's medical records, noted in his report that:

> The medical records do not delineate any specific functional impairments resulting from the use of pain medications. I discussed this issue with Dr. Pettingell. He notes that Mr. Brown appears to tolerate his multiple medications well with no cognitive deficits or excessive sedation.

[Docket No. 28-14 at 9]. Therefore, the Court cannot conclude that Fant's report is a distortion, as Brown alleges. The Court is also not swayed by Brown's argument that Fant's lack of medical training undermines the reliability of her report. The Court does not see how medical training is necessary to undertake what Fant did: match certain criteria to a database of occupations. The Court, therefore, cannot conclude that Fant's report is unreliable, as Brown alleges.

That finding of reliability does not end the inquiry, however, the Court is still left with the reports of Fant and Blackstock on one hand, and the report of Mallon on the other. Based upon the

Court's examination of those three reports, the Court is not convinced that Brown is unable to performing one or more of the essential duties of *every* occupation that Brown is qualified by education, training, or experience to perform. The reports by Fant and Blackstone both identify occupations that Brown is capable of performing in his current condition. The evidence presented by Brown is insufficient to show that he is incapable of performing each and every one of the identified occupations.

Therefore, the Court finds that Hartford was correct in denying Brown "any occupation" long term disability benefits based upon Brown's failure to present competent evidence of disability according to the Plan's definitions and terms.

## **CONCLUSION**

The Court therefore AFFIRMS Hartford's denial of Brown's ERISA claim for long term disability benefits.

IT IS SO ORDERED this 14th day of November, 2007.

_____
James H. Payne
United States District Judge
Eastern District of Oklahoma