# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GERAL R. BROWN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 06-CV-115-JHP |
| | ) |
| HARTFORD LIFE INSURANCE CO., | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Before the Court is Defendant Hartford Life Insurance Company's Motion For Summary Judgment and Brief in Support [Doc. Nos. 50 and 51] and Plaintiff's Response in Opposition [Doc. No. 55]. Also before the Court is Plaintiff Geral Brown's Opening Brief in Support of ERISA Claim for Long Term Disability Benefits [Doc. No. 53], Defendant's Response in Opposition [Doc. No 58] and Plaintiff's Reply [Doc. No. 59]. For the reasons stated below, this Court **GRANTS** Defendant Hartford Life Insurance Company's Motion for Summary Judgment **AFFIRMING** its denial of benefits for long term disability benefits.

## BACKGROUND

The Plaintiff filed this lawsuit pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132 (ERISA), seeking review of Hartford's denial of long term disability benefits arising under an employer sponsored disability benefit plan. On November 14, 2007, this Court entered an Opinion and Order granting summary judgment in favor of Hartford and affirming its denial of benefits. Brown appealed this Court's decision to the Tenth Circuit and on December 29, 2008, the Tenth Circuit issued an Order and Judgment reversing this Court's decision and

1

remanding the case for further determination [Doc. No. 38]. The factual background regarding Plaintiff's injuries and Defendant's denial of his claim for long term disability benefits are sufficiently set out in both the Court's Order granting summary judgment [Doc. No. 30] and the Tenth Circuit's Order. [Doc. No. 38].

The Circuit found Hartford's denial of benefits should have been reviewed by this Court using the arbitrary and capricious standard of review rather than the *de novo* standard applied by the Court. On remand, this Court has been instructed to:

> . . .re-examine all the evidence in light of the applicable standard of review. In so doing, it should be careful to appropriately weigh (1) Hartford's inherent conflict of interest; (2) Hartford's summary rejection of the decisions of the SSA and OWCC finding Mr. Brown disabled, considering the differing standards applied by the governmental agencies but also considering any financial benefit Hartford derived from those determinations; and (3) the opinions of Cheryl Mallon and Dr. Hastings and Hartford's reasons for rejecting those opinions.
> [Doc. No. 38]

On remand, the parties have briefed the issues specifically raised by the Circuit as well as the application of the arbitrary and capricious standard.

## **DISCUSSION**

**A.   Standard of Review**

As determined by the Circuit, ERISA's arbitrary and capricious standard of review applies rather than the *de novo* standard originally applied by this Court. Under an arbitrary and capricious standard, the Court's review is "limited to the administrative record-the materials compiled by the administrator in the course of making his decision." *Fought v. UNUM Life Ins. Co. Of Am.*, 379 F.3d 997, 1003 (10th Cir. 2004). "Under a 'pure' version of the arbitrary and capricious standard, a plan administrator's or fiduciary's decision will be upheld 'so long as it is predicated on a reasoned

basis.'" *Graham v. Hartford Life & Acc. Ins. Co.*, 2009 WL 702813, *5 (N.D. Okla. March 13, 2009) (quoting *Adamson v. UNUM Life Ins. Co. of Am.*, 455 F.3d 1209, 1212 (10th Cir. 2006)).

When reviewing a benefits determination under this standard, the administrator's decision must only "reside[ ] somewhere on the continuum of reasonableness-even if on the low end." *Id*. (Internal citations omitted). However, if an ERISA fiduciary both decides eligibility and pays benefits claims out of its own pocket, an inherent conflict of interest arises. *See Fought*, 379 F.3d at 1005. This is because the fiduciary is in a position to "favor, consciously or unconsciously, its interests over the interests of the plan beneficiaries." *Id*. at 1003. Here, Hartford was operating under an inherent conflict, therefore, the Court must weigh the conflict of interest "as a 'factor in determining whether there is an abuse of discretion.'" *Id.* (quoting *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989)).

The recent decision by United States Supreme Court in *Metropolitan Life Insurance Company v. Glenn*, 554 U.S. 105, 128 S. Ct. 2343, 2350 (2008), modified the approach of reviewing a denial of benefits by a conflicted administrator. Prior Tenth Circuit cases held that when a decision was rendered by a conflicted plan administrator, the burden shifted to the administrator "to establish by substantial evidence that the denial of benefits was not arbitrary and capricious." *Fought*, 379 F.3d at 1005. *Glenn*, however, "expressly rejects and therefore abrogates this approach." *Holcomb v. UNUM Life Ins. Co. of Am.*, 578 F.3d 1187, 1192 (10th Cir. 2009). In rejecting a burden shifting approach, the *Glenn* Court stated:

> Neither do we believe it necessary or desirable for courts to create special burden-of-proof rules, or other special procedural or evidentiary rules, focused narrowly upon the evaluator/payor conflict. In principle, as we have said, conflicts are but one factor among many that a reviewing judge must take into account. Benefits

> decisions arise in too many contexts, concern too many circumstances, and can relate in too many different ways to conflicts- which themselves vary in kind and in degree of seriousness-for us to come up with a one-size-fits-all procedural system that is likely to promote fair and accurate review. Indeed, special procedural rules would create further complexity, adding time and expense to a process that may already be too costly for many of those who seek redress.

128 S. Ct. at 2351

*Glenn* embraces instead a "combination-of-factors method of review" that allows judges to "take account of several different, often case-specific, factors, reaching a result by weighing all together." *Id.*

In reviewing this evidence in this case, specifically as it relates to Hartford's conflict of interest, this Court will apply this standard of review.

**B.     Hartford's Inherent Conflict of Interest**

The Circuit Court found Hartford was "both the insurer and administrator of the Plan." [Doc. No. 38, pg. 6] The Circuit instructed this Court to consider the financial conflict inherent in the "double role" Hartford has taken on and weigh it as a factor in "determining the lawfulness of the benefits denial." [Doc. No. 38, pg. 6]

In addressing how much weight to give to the conflict of interest factor, the Court in *Glenn* stated:

> [A] conflict of interest . . . should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration. It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by

4

> walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decision making irrespective of whom the inaccuracy benefits.
> *Id.* at 2351.

The *Glenn* Court noted that the insurer's inherent conflict of interest can be minimized if steps are taken to reduce the bias created by the conflict and promote accuracy in the claims process. Hartford has taken those steps to ensure the inherent financial conflict of interest has little if any effect on the accuracy of the claims process. [Doc. No. 51-2] Hartford ensures the group recommending denial of benefits and the group considering any appeals are not from the same department. [Doc. No. 51-2] "Appeals specialists" tasked with reviewing appeals of claims denials are to make appeals decisions based on an independent review of the file and do not interact with the initial claims adjuster to make their decision. [Doc. No. 51-2] Hartford does not provide financial incentives to its adjusters to deny claims. [Doc. No. 51-2] There are no bonuses, remuneration, awards, achievements, or other incentives from the company to deny claims. [Doc. No. 51-2] Claims decision makers are paid a fixed salary and performance bonuses which are wholly unrelated to the number of claims paid or denied. [Doc. No. 51-2] The Hartford claims and appeals departments are separate and distinct from the Hartford financial department. [Doc. No. 51-2] The chief financial officer does not have any decision making role or involvement in the claims process. [Doc. No. 51-2]

Brown urges this Court to refuse to consider the declaration of Bruce Luddy, [Doc. No. 51-2] director of litigation and appeals for Hartford, which was attached to its Motion for Summary Judgment and submitted as support for its statements regarding its efforts to minimize the company's inherent financial conflict of interest. Brown contends this Court is only to review the documents contained in the administrative record and that this Court has denied his efforts to supplement the

5

administrative record with similar documents. However, Brown requested this Court allow him the ability to conduct limited discovery in several areas. This Court entered an Order granting in part, and denying in part Brown's request allowing him to conduct limited discovery but only as to the conflict of interest issue. This Court stated:

> After a careful review of the existing law on this issue, this Court finds that discovery beyond the administrative record is necessary in this case in order for the Court to properly determine the seriousness of Hartford's conflict of interest. It is undeniable that Supreme Court and Tenth Circuit precedent requires district courts to consider a plan administrator's inherent conflict of interest as a factor, the weight of which depends on the seriousness of the conflict. Denying plaintiffs an opportunity to discover evidence indicative of a serious conflict, such as a history of biased claim administration or the failure to take steps to reduce potential bias, would be equivalent to ignoring clear instructions from the circuit and Supreme Court.
> [Doc. No. 44]

Although this Court denied Brown's attempt to supplement the administrative record, the documents Brown attempted to add did "not relate to any conflict of interest issues, but rather, related to the merits of the Defendant's decision to deny the Plaintiff's claim for benefits." [Doc. No. 49] Brown was granted the opportunity to conduct discovery as to the conflict of interest issue and did not, at any time, request to supplement the record with deposition testimony or other documents which would suggest the statements of Bruce Luddy regarding the company's steps to ensure the integrity of the claims process is protected are not true. Since this Court allowed additional discovery on the conflict of interest issue, this Court finds it appropriate to consider the declaration submitted by Bruce Luddy regarding the issue.

After reviewing the claim and the inherent financial conflict of interest, this Court finds that there is no evidence the conflict effected the outcome of the claims decision or that Hartford has a a history of biased claims administration. To the contrary, the evidence before the Court establishes

that Hartford has taken proactive steps to ensure the conflict of interest is minimized and does not influence the claims administration process by separating the initial claims handler from the appeals specialist, paying a fixed salary to its decision makers without incentives for denying claims, and separating the financial department from the claims department such that the claims handlers do not interact with the underwriters or financial department in the handling of a claim.

C. **Hartford's Handling of the Social Security Administration Decision and Oklahoma Worker's Compensation Commission Decision**

The Circuit remanded this matter for this Court to further consider "Hartford's summary rejection of the decisions of the SSA and OWCC finding Mr. Brown disabled, considering the differing standards applied by the governmental agencies but also considering any financial benefit Hartford derived from those determinations." The Circuit in addressing Hartford's decision to "ignore" the Social Security Administration (hereinafter "SSA") and Oklahoma Workers Compensation Commission's (hereinafter "OWCC") determinations, cited the Supreme Court's recent comments in *Glenn*:

> [T]he [Sixth Circuit Court of Appeals] found questionable the fact that MetLife had encouraged Glenn to argue to the Social Security Administration that she could do no work, received the bulk of the benefits of her success in doing so (the remainder going to the lawyers it recommended) and then ignored the agency's finding in concluding that Glenn could in fact do sedentary work. This course of events was not only an important factor in its own right (because it suggested procedural unreasonableness), but also would have justified the court in giving more weight to the conflict (because MetLife's seemingly inconsistent positions were both financially advantageous).
> [Doc. No. 38, pg. 8, citing *Glenn*, 128 S.Ct. at 2352]

The Circuit found that Hartford's discussion regarding its determination of Brown's approval for Social Security Disability benefits was conclusory and "provided no specific discussion of how

the rationale for the SSA's decision, or the evidence the SSA considered, differed from its own policy criteria or the medical documentation it considered in rejecting Mr. Brown's claims." [Doc. No. 38, pg. 8]

This Court finds this case to be distinguishable from *Glenn*. Although the statements by Hartford regarding its evaluation of the SSA's decision were conclusory, Hartford did not become intimately involved in the claimant's decision to seek social security benefits such that its decision to later deny benefits was tainted by a financial conflict of interest. Further, the documents regarding the reasoning for the SSA's determination were not part of the administrative record and therefore, not considered in making the determination as to whether to deny benefits to Brown. However, the medical reports and medical evidence submitted to the OWCC and SSA were submitted to Hartford and given appropriate consideration.

In *Glenn*, MetLife not only suggested the claimant apply for social security benefits but "encouraged Glenn to argue to the Social Security administration that she could do no work. . .", it recommended lawyers to Glenn for use in her SSA case, and then ignored the agency's findings that found she could do no more than sedentary work. *Glenn*, 128 S.Ct. at 2351. Such is not the case here. Although Hartford encouraged Brown to apply for Social Security Disability benefits, its involvement ended there. It did not tell or suggest to Brown what he should argue to the SSA, recommend lawyers, or provide him any forms or information regarding how to apply for benefits. Although Hartford receives a financial gain from Brown's receipt of social security benefits, the conflict in simply suggesting he apply for benefits is minimal. Further, this Court has factored in the possible financial conflict of interest present and the documents reviewed by Hartford and does not find this conclusion to be in error.

8

Finally, although Hartford's statement that "the SSD decision is based on specific and established rulings, and is not binding on The Hartford, as we must administer his claim based upon our policy language, and the medical documentation available to us," is conclusory, it is not untrue. The Hartford policy includes the following language:

> Disability or Disabled means that during the Elimination Period; and for the next 12 months, you are prevented by:
> 1. Sickness
> 2. Mental Illness
> 3. Accidental bodily injury,
> 4. Substance abuse, or
> 5. Pregnancy,
>
> from performing one or more of the essential duties of Your Occupation, and as a result your current monthly earnings are no more than 80% of your Indexed Pre-Disability Earning.
>
> After that, you must be so prevented from performing one or more of the Essential Duties of Any Occupation.
> [Doc. No. 28-3]

"Any Occupation" is defined as:

> [A]n occupation for which you are qualified by education, training, or experience, and that has an earning potential greater than an amount equal to the lesser of the product of your Indexed Pre-disability Earnings and the Benefit Percentage and the Maximum Monthly Benefit shown in the Schedule of Insurance.
> [Doc. No. 28-3]

The policy requires Brown to be prevented from performing the essential elements of any occupation as defined by the policy before becoming eligible for benefits. This standard is different than that required to obtain benefits under SSD or workers' compensation. *See* 42 U.S.C.A. §423(d) As such, this Court finds Hartford's review of this issue, reasonable.

**D.  Medical Documentation Reviewed by Hartford**

The Circuit also ordered this Court to consider, in its review of Hartford's decision, "the

9

opinions of Cheryl Mallon and Dr. Hastings and Hartford's reasons for rejecting those opinions." Cheryl Mallon was the rehabilitation consultant who performed a vocational assessment for the worker's compensation proceeding. She concludes in her report that the restrictions placed by Brown's treating physician "would severely limit any vocational options for retraining." [Doc. No. 20-5, pg. 32] She concludes that he is "permanently and totally disabled from earning any wages in any employment for which he is, or could become physically suited, or reasonably fitted by education training, or experience." [Doc. No. 20-5, pg. 32]

Hartford considered Mallon's evaluation, but also considered two other vocational assessments conducted by Rhonda Blackstock and Diane Fant. [Doc. No. 20-2, pg. 27] Hartford noted in its letter dated September 12, 2005, that each of these vocational assessments were based upon the recommendations of Dr. Pettingell for no lifting over 5 pounds and no repetitive use of the left upper extremity. [Doc. No. 20-2, pg. 27] Fant, using the Occupational Access System (OASYS), identified four potential occupations Brown could perform with his physical limitations including routing clerk, identification clerk, dump ground checker, and checker I. [Doc. No. 20-5, pg. 72-73] Blackstock also noted Brown's physical restrictions but determined "his work history is such that he does have transferable skills" and "job placement is a viable vocational option." [Doc. No. 20-5, pg. 94] She found Brown had the academics and learning abilities to successfully participate in a retraining program and that a "retraining program would provide him with updated and highly marketable skills to seek and obtain employment in the competitive workforce." [Doc. No. 20-5, pg. 94] She also set forth a list of recommended potential areas of employment.

As seen in its September 12, 2005, letter, Hartford considered all three of these vocational evaluations in makings its determination whether or not benefits were available. In its letter

Hartford states Mallon's report "appears to provide greater weight to Mr. Brown's subjective report that 'He does not feel he could work with all of his limitations.' " [Doc. No. 20-2, pg. 27] Hartford also states Mallon's report provides no "description of any method utilized to attempt to identify or rule out occupations that my be performed within his vocational and medical qualifications."

The Court also notes that Hartford considered the medical opinions of Dr. Jerome Siegel and Dr. Jeffery Pardee, both of which contradict the finding that Brown cannot return to the workforce. As such, this Court finds Hartford appropriately considered the report of Mallon in making its determination and was reasonable in finding the other two reports, which found and identified occupations Brown was capable of obtaining, persuasive in making its determination.

Hartford's letter of September 12, 2005, also demonstrates it considered the medical evaluation conducted by Dr. Hastings in making its decision to deny benefits. Dr. Hastings conducted an independent medical evaluation of Brown "in accordance with Rule 20 of the Workers' Compensation Court..." [Doc. No. 20-5, pg. 45] Dr. Hastings, in his June 21, 2004 report, recommended that Brown be seen by an orthopedic surgeon as well as a board-certified psychiatrist regarding his "psychological overlay and clinical depression." [Doc. No. 20-5, pg. 58] Dr. Hastings also found Brown to be temporarily totally disabled and concluded he "remains unable to return back to the workplace at this time as we find the patient to be unemployable as a direct result of the injuries . . ." [Doc. No. 20-5, pg. 58] Hartford made note of Dr. Hastings' findings in its September 12, 2005, letter and then stated:

> In contrast, the 10/6/04 report by Dr. Pardee concludes that he "has sustained an injury to the left arm and elbow, alone." He also found "no evidence of impairment for psychological overlay" as well as "no need for ongoing medical care, supervised physical therapy, additional diagnostic testing, or additional surgery" nor "psychological counseling or psychiatric intervention. There is no

11

contraindication to Mr. Brown returning to the workforce, at any time." Both Dr. Hastings and Dr. Pardee provided an extensive, detailed review of the patient's prior medical history, including findings of Dr. Grooms, Dr. Fox, Dr. Pettingell, Dr. Hale, Dr. Weaver, and Dr. Watts.
[Doc. No. 20-2, pg. 25]

Hartford also referenced medical records it reviewed from Dr. Terry Shaw. Dr. Shaw performed a psychological evaluation of Brown on March 5, 2005. [Doc. No. 20-3, pg. 33] Shaw concluded that Brown "failed to respond in an open and honest manner on pain ratings, cognitive tasks, and endorsement or psychological symptoms." [Doc. No. 20-3, pg. 37] Because of that, Dr. Shaw was unable to say with any degree of certainty whether Brown suffered from any legitimate injury-related psychological overlay, but could conclude that as far as he was able to discern, Brown "otherwise appears to be at MMI from a physiological perspective and not in need of additional referral for psychological or psychiatric evaluation and treatment." [Doc. No. 20-3, pg. 37]

In addressing these reports and evaluations Hartford noted:

> We have no documentation of any medical recommendation for psychological or psychiatric care other than by Dr. Hastings on 6/21/04. We also have no indication that Mr. Brown has sought care through any mental health professional. The Claimant questionnaire completed by Brown on 3/17/04 describes medical limitations related to Elbow replacement, RSD, osteoporosis in his hand, range of motion of the elbow and shoulder, pain, medication, and problems sleeping. The medical records available to us do not document any significant impairment or medical limitations as a result of his use of pain medication. Mr. Brown has not reported any limitations as a result of psychological problems, back problems, or other musculoskeletal problems unrelated to his left upper extremity. He did indicate on the Claimant Questionnaire that he had recently enrolled in a gym and was trying to learn to use the computer he had recently acquired.
> [Doc. No. 20-2, pg. 26]

12

The administrative record is clear that Hartford reviewed and considered the medical records of Dr. Hastings in makings its decision to deny benefits. In light of the conflicting medical opinions provided to Hartford, this Court finds Hartford's treatment of Dr. Hastings' findings reasonable.

E.    **Whether Hartford's Decision To Deny Benefits Was Correct As Reviewed Under An Arbitrary And Capricious Standard of Review**

This Court has looked separately at each of the issues raised by the Tenth Circuit in its Order; however, ultimately, the question before this Court is whether Hartford's decision to deny benefits was correct as reviewed under the arbitrary and capricious standard of review. This Court finds Hartford was correct in its decision when reviewed using this standard. As previously addressed, under an arbitrary and capricious standard, the plan administrator's decision will be upheld, "so long as it is predicated on a reasoned basis." *Graham*, 2009 WL 702813, *5 (N.D. Okla. March 13, 2009) (quoting *Adamson v. UNUM Life Ins. Co. of Am.*, 455 F.3d 1209, 1212 (10th Cir. 2006)). Under this standard "we employ a deferential standard of review, asking only whether the denial of benefits was arbitrary and capricious." *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death, & Dismemberment and Dependent Life*, 605 F.3d 789, 796 (10th Cir. 2010)

This Court has examined in detail and weighed in its analysis a number of factors including Hartford's inherent financial conflict of interest, Hartford's handling and rejection of the decision of the SSA and OWCC and Hartford's consideration and analysis of the opinions of Cheryl Mallon and Dr. Hastings.

The language of the policy required that . . ."you must be so prevented from performing one or more of the essential duties of **Any Occupation**." (Emphasis added) [Doc. No. 28-3] This Court finds that, after a review of the record and an analysis of each of these factors, Hartford's decision in concluding Brown was not disabled under the terms of the policy as he was not unable to perform

"any occupation" and therefore, was not entitled to benefits, was correct and should be affirmed.

For these reasons, Hartford's Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED this 14th day of September, 2010.**

James H. Payne
United States District Judge
Eastern District of Oklahoma